We have Mr. Murphy, representing Mr. Jones. Mr. Murphy, you can begin whenever you're ready. Yes, Your Honor. Thank you. I may please the court. Tim Murphy, Federal Public Defender's Office. I'm Mr. Jones this morning. We'd like to address under point one the court's use of my client's 2010 attempted New York State robbery conviction under four people- Let me just ask you before you get that. The government does raise the issue of the appellate waiver, and I'm having trouble understanding why it doesn't apply. Yes, Your Honor. So on the guidelines questions, your client was told at the plea you're waiving any sentence of 105 months or less. Obviously the sentence was within that waiver, and what's your position on how you can raise a guideline challenge? Especially, I'm not sure this is necessary, but he stipulated in the plea agreement to the very two enhancements that you're now seeking to challenge. So how did you not get the benefit of the bargain? This plea agreement said these enhancements apply. I'm not appealing any sentence of 105 months or below, and the district court applies the enhancements he agreed to and gives him a sentence of less than 105 months. Well, a couple things, Your Honor, and the court will find this on page 173 is the plea agreement provision that Your Honor is speaking about, and 210 is one that's discussed briefly on the record at the time of the plea. A couple things about the appeal waiver. This is a generic, very vague reference to 3742. It does mention the 105 months, Your Honor. There's not even a hint referenced about procedural unreasonableness. The waiver reads like a- Except it says any challenge to any sentence, right? Isn't a procedural unreasonableness challenge to a sentence a challenge to a sentence? It reads more like substantive unreasonableness, frankly, Your Honor. Why? What's in the words any challenge that suggests it's only a substantive challenge? What's interesting about it, Your Honor, the northern district has been doing it this way, I guess, for a long time. If you look at some of the other districts, like the western district, the southern district, there is reference to the manner in which the court is going to go about determining the final- Well, maybe that's better to put in additional language that says including you can't challenge how it was arrived at, which I think is what you're referring to in those other plea agreements. But just because that's absent doesn't mean that it was unclear, especially, and I want you to address this, when the stipulations address these very provisions that you are- Your client agreed that the base offense level should be higher, and your client agreed to the four-level enhancement in the plea agreement. He got exactly what he bargained for. A couple of things that I'd ask the court to look at. This court's very familiar, I know, with the Reedy decision, which dealt with restitution. That was also out of the northern district. And evaluating a plea agreement in kind of the guise that we do with a contract, we interpret it against the drafter, which is, of course, the government, which has a greater bargaining authority here. And I don't mean to give such a long-winded answer here, but we're supposed to be scrutinizing the terms carefully and interpreting them narrowly. And in Reedy, what this court did with a very generic 3742 waiver was make the observation, page 559 of that decision, that the 3742 waiver did not distinctly negate the restitution reference. And I ask the court to take that same approach here. It is also- But Bianca was not asking now about the terms of the plea agreement. He's saying even if there weren't a plea agreement, the fact that he stipulated to certain guidelines, enhancements, and calculations, that itself would operate as a waiver, regardless of whether it was in the context of a plea agreement. And I don't mean to be evasive on the question, Your Honor, but one point on this that goes to what he stipulated to in that plea agreement was that the basis for his appeal here, of course, is Taylor. And that was decided about a week and a half after he entered into this agreement. And I think that- You're saying we shouldn't hold him to his stipulation because he wasn't aware of subsequent legal developments? I'm saying that when this court is held to the standard that it set out in Reedy and Rosa, there has to clearly demonstrate on the record that he understood what was going on. And one of the factors I would ask you to consider is that the basis for his appeal, that decision had not even come out when he entered into this agreement. I ask you to consider it as a factor. He specifically waived in the plea agreement any constitutional challenge to 922G, and here you are on that issue. So why shouldn't we enforce that waiver? He specifically bargained away this particular challenge, and you want us to just disregard that? I have the same position with regards to the specificity of the waiver. I mean, it couldn't be more specific. The waiver says, right? It specifically mentions that issue, right? It's really specific. It's pretty unusual, actually, right? I agree with that, Your Honor. I would rely on my brief with regards to the Second Amendment issue. But I would ask the court to address our 4B1.2a issue, and that is because we do maintain that this is plain error. At the time of my client's sentencing, 4B1.2a only included completed crimes within the text. As the court knows, So what? All right, so let's just take this in steps, right? So first of all, Taylor is about the definition of a crime of violence in 924, right? Yes, Your Honor. And so there there's just an elements clause that says it has to have as an element the use, threatened use, or attempted use of physical force. Yes. The guidelines, let's assume for the time being that the application note is in the text, right? Then attempted robbery would fall into the definition of crime of violence, right? If it was within the guidelines, Your Honor. Right. And so your argument is just the idea that we shouldn't look to the commentary when it's not in the rule, right? Post-Loper, post-Kaiser, yes, that's my answer. I mean, so just a month ago, you know, we said in United States v. Rainford that the Supreme Court hasn't overturned Stinson and hasn't overturned our prior precedents that we read the guidelines and the commentary together, and there's no threshold test of ambiguity. So if, in fact, we adhere to those precedents that say that you read them together, then it means the guidelines do, in fact, define a crime of violence as having an element or an attempt to commit or an inchoate crime. And I know Rainford was, Your Honor, I think wrote Rainford. I did. It was last month. I am familiar with the fact that we said that, yes. So that was in the government's 28-J letter. And if I could just distinguish this, Rainford was dealing with a white-collar prosecution. We're dealing with the definition of loss, and the commentary expanded it to intended loss. And Your Honor's comments, I think, were very interesting, Rainford. You noted that the definition of loss can change depending on the circumstances. I'm just paraphrasing. Different circumstances can mean the definition could be different. That's the polar opposite of our situation because of this intervening Supreme Court decision in Taylor. Taylor really scaled down what the definition of crime of violence can be, and that's the distinction that I was saying. So your argument is that after – it's not that Taylor is interpreting a guidelines provision. No. But after Taylor, we should understand the language as an element that you threatened to use or attempted to use of physical force to exclude inchoate crimes. Yes, Your Honor. Even though the guidelines say that it should be included, but because they do it in – or at least at the time did it in an application note as opposed to in the text, it means that the application note contradicts the text. Yes, sir. It's plainly erroneous. Why – if there's no threshold text of ambiguity and we said that, in fact, you read them together because they're all adopted through the same procedures and operate as a reticulated whole, which is what we said, then why shouldn't we understand the elements definition in light of all the commentary to include the attempted crimes? Because Stinson said that it is authoritative what we're looking at when we look at the commentary. However, if it is plainly erroneous, we cannot apply it. Taylor makes it plainly erroneous. So when Your Honor says we're going to look at the text – But Taylor is an interpretation of 924. So if I just say a crime of violence is a crime that has as an element the use, attempted use, or threatened use of physical force. Yes. You think that just as a matter of plain speech, it's obvious that if I have an attempt crime, it just is clearly not included in that language? No, I wouldn't. So if it's not obvious that it's excluded, then it means that the application note doesn't contradict the rule, right? Without the explanation in Taylor, what Justice Gorsuch was getting into in all these hypotheticals was, I would say, the uniqueness in attempting to commit – I think he was talking about a bank robbery – as opposed to perhaps other types of attempts. Attempting to commit a robbery is the lane that Taylor was talking about. Just applying Stinson – forget about even Kaiser yet – just applying Stinson, this is plainly erroneous because of Taylor. Taylor cabined off what can be described as a crime of violence. But only under the 924C definition. So the Guidelines has its own separate definition. Judge, it's almost the chicken and the egg. I can't argue with you that if it's in the Guideline itself, I agree with your point. But in order for us to accept this as authoritative under Stinson, we have to recognize that it's intervening authority from Taylor. And that's our position. So you're telling me that if this language about inchoate crimes was in the rule – or in the Guideline and not in an application note, you should lose? Because the conduct would be covered as a crime of violence. I believe I would have to lose that. So it's the difference between having it in an application note and having it in the Guideline. But so you're telling me that that's the key difference that should make all the difference here in terms of the outcome. But also a month ago we said that it all operates together as a whole and you should read them together, that there's no difference in status between the commentary and the Guideline. So I just don't understand. So you're telling me that it makes all the difference whether it's in the commentary or the Guideline just seems to me to run headlong into what we just said in the precedential opinion. But Rainford didn't – it didn't overview Stinson. It didn't overview the concept that if you have something that is plainly erroneous in the face of what we see in the text, it shouldn't be applied. And that's what we believe Taylor does. Thank you, Mr. Murphy. Thank you, Your Honor. We'll hear from the government. Mr. Clymer. May it please the Court, Stephen Clymer for the United States. Unless the Court prefers otherwise, I'll first address the waiver issues and then address the merits on the Sentencing Guidelines claim. On the waiver issue, I just would reiterate something the Court's already raised, which is a litigant can't ask a district court to do something and then when the court does it, find it – argue that it's error on appeal. Here, Mr. Jones stipulated to the applicability of two Guideline provisions, and he now asked the Court to find that the lower court erred by doing what he asked it to do. The fact that Taylor came down, a case that has nothing to do with the Guidelines, shortly after he entered into those stipulations doesn't matter. If it mattered to Mr. Jones, he certainly could have moved to withdraw his guilty plea on that basis. He never did so. Well, putting aside whether Taylor mattered, just assuming that it does matter, why shouldn't we understand the stipulations as him saying, under the current state of the law, this is the appropriate Guidelines calculation and I don't dispute that? But if you make such a statement, it might change if the law changes. Because Taylor was a 924C case, and 924C doesn't include application of what? So let's just – so just for purposes of my hypothetical, let's say Taylor were a Guidelines case. So let's say he stipulates and then the Supreme Court subsequently says that is a wrong interpretation of the Guidelines. Would then he be able to challenge the Guidelines calculation? I think the answer is no, Your Honor, and I think the – this Court's decision in Cook, I think, makes that clear. Recall in Cook, the defendant entered into a waiver of his right to collaterally attack his conviction, and then the Court decided – the Supreme Court decided Johnson and Davis, and the conviction that he had pled guilty to, which was a 924C, no longer had a viable predicate in it. It was a conspiracy to commit Hobbs Act robbery. And so this Court was confronted with situations, should it enforce that waiver despite the change of – If it's an enforcement of a waiver – so let's just separate out the two things. So I get your point that if he waives it, it doesn't matter what the subsequent legal development is. Just on the – let's say we had the stipulation without the waiver. So if he stipulated to a Guidelines calculation and then the Supreme Court later said that that is not the way the Guidelines are supposed to operate, would the stipulation still bind him? We would argue the answer – short answer, yes. Agreement? Short answer, yes. And especially in a situation like this where the defendant, before sentencing, would have an opportunity to move to withdraw his guilty plea on that basis when Taylor came down, this defendant chose not to do so. I just want to – Mr. Murphy made one point, and I think it's accurate that I think virtually every other district, U.S. Attorney's Office and the circuit does, in their standard language in the plea agreement, state that this waiver applies no matter how – I don't know the exact language. You may know what I'm referring to. This waiver applies no matter how the Guidelines are – how the sentence is arrived at. So it makes clear that it's not just a substantive challenge to the number that you're waiving, but you're waiving any procedural challenge as to how the number was arrived at. Your office does not use such language? I plan to recommend that we change the language to say that, Your Honor. But I would like to point out two things about that. First, this Court has repeatedly applied the language that the Northern District uses to foreclose claims just like Mr. Jones here. Second, this was a plea agreement that was replete with references to the Guidelines playing a role in the calculation of the sentence ultimately. And Mr. Jones could not have been misled into believing that he was able to challenge the way the Court calculated his sentence when he said, I'm giving up any claim or any challenge to my sentence on appeal. All right. Right. So your position is that any challenge to any sentence is a procedural challenge or a substantive challenge? That's correct, Your Honor. Is there any other way to understand the phrase any challenge? Not to my knowledge, Your Honor. But could I understand a procedural reasonable challenge to a sentence not to be a challenge to a sentence? I can't understand it that way, Your Honor. On the merits, the problem with defense counsel's argument is that we were on plain error review at best. If it's not waived, the review is for plain error because there was never a challenge at the sentencing stage to the application of the enhancement for purposes of calculating the base offense level. He does seem to suggest that his counsel was ineffective for failing to do that. And I'll get to that. I'd actually like to get to that in a minute, Your Honor, if I could. The problem he has is not only does this court's case like Rainsford and the more recent decision, Zang, which adopts exactly what Rainsford said about the authoritativeness of the guidelines commentary foreclosed his claim, he also ignores the fact that Jackson, Richardson, and Tabb, this court, all three cases, said that particular guideline provision, that commentary application, no one is authoritative. If we're on plain error review, there is no way he can succeed, even if he can somehow fashion an argument that I believe this court would reject quickly, that Loper, Bright, or Kaiser somehow undermine stints. So I get the idea about plain error, and you're saying there can't be a plain error, but I'm curious if that's just what the right answer is. So he's saying, well, Taylor says if you have an elements clause, that just doesn't include NCOA defenses. You understand it to exclude NCOA defenses. And so therefore, the commentary actually contradicts the guideline. What do you think about that? I don't believe that's true, Your Honor. A contradiction is when one provision says one thing and another provision says another. Here we have one provision that omits mention of attempt, the guideline text at that time itself, and then we have another provision that explains the meaning of that earlier text. I don't believe it's accurate to describe those two provisions as contradictory. Because if I said a crime of violence is one that has as an element the use, threatened use, or attempted use of physical force, you're saying it's possible that I could be referring, I could be including NCOA crimes in that statement? I believe it's left unanswered, Your Honor. It's left unanswered, meaning it's an open question. Correct. It's not that there's a term there that's ambiguous? My view is that it's left open and the commentary simply supplements the earlier provision. It does not contradict it. And you think that the commentary can supplement it because of what we've said about reading everything together? Exactly. And the more recent decision is the Zhang case. Counsel cited that in his 20HA letter, but he incorrectly referred to it as unpublished. It's a published decision. I'll get the court a 20HA letter on that citation. Finally, I just want to mention the ineffective assistance counsel claim very briefly. I know this court typically will not rule on ineffective assistance claims and allow them to go back to the district court for a possible 2255. This situation is a little different than those situations. Here he claims ineffective assistance of counsel for failing to raise at sentencing the Second Amendment claim and the sentencing claim. Both of those claims are waived in the plea agreement. So for defense counsel to have raised it, which is what he claims defense counsel should have done in the district court, he would have had to breach the plea agreement. And it can't be that you're ineffective as an attorney for not breaching a plea agreement. There's no claim that he was ineffective in drafting the plea agreement or entering into the plea agreement. He just claims he's ineffective for not raising it at sentencing. And the claims he says that defense counsel should have raised below both Taylor. If the arguments were obvious winners, then you would be ineffective for agreeing to accept them, right? To agree to it in the first place, yes. But that's not his claim. His claim is not you failed your client by entering into this agreement. It's that you didn't raise it at sentencing. He doesn't challenge the other one. So for the reasons I've stated, Your Honors, I ask that the court dismiss the sentencing claim and the Second Amendment claim and ask that you rule for the government on the other claims. Thank you. Mr. Murphy, you have two minutes to rebuttal. Thank you, Your Honors. With regards to the ineffective assistance, we're not saying that he should have tried to reopen the plea agreement. What he should have done, he had, by the way, counsel gets assigned about a month before the plea is entered, probably I think May of 2022. The plea is entered on June 9th. What he should have done, he had four and a half months to prepare a variance that he could request of the court and ask that the guideline range be reduced in its discretionary to begin with. He had four and a half months to address this issue. We're not suggesting that he undo the whole plea. He wasn't looking for a trial here. The court knows that the facts were overwhelming here. I want to distinguish something. How would that work where it wouldn't be a breach of the plea agreement? You would say we stipulated to this enhancement and the application of the statute. We think that those stipulations were wrong as a matter of law. Nevertheless, I don't want you to change the calculation. I want you to vary downward because we stipulated to an incorrect application of the law. That's assuming Taylor came out about 12 or 13 days after the plea agreement was entered. So this is new information. It's an intervening Supreme Court decision that counsel should have addressed. That's what we're suggesting. We're not suggesting that the application. If you raise these challenges that are agreed to in the plea agreement, how would he raise the challenges without breaching the plea agreement? Judge, I believe he could have done that because we have an intervening Supreme Court decision. That's our position on that. I want to distinguish also this idea of contradicting versus plain error. In Stinson, and you could see it at page 45 of the Stinson decision, and it's nothing earth shattering. We all know the holding. But Stinson talks about plainly erroneous or inconsistent. We're not looking at the text of the guideline in a vacuum. We are describing it as plainly erroneous because of the Taylor decision. If you look at it in a vacuum, I'm not prepared to say to you it is inconsistent on its face. And I keep hearing the word contradictory. It doesn't have to be contradictory. If you look at it in a vacuum, you're saying it's not inconsistent, right? So you're saying in the absence of Taylor. I'm not waiving that issue, but that's not my position. Okay, no, I get it. Yes, Judge. So if you're saying in a vacuum, if I just said as a matter of ordinary English, a crime of violence is used, attempted use, or threatened use of physical force, you might say, well, you know, there is a background legal principles that often treats attempt or aiding and abetting or whatever as the crime itself, and so maybe that statement does include inchoate crimes, right? So you're saying it wouldn't necessarily be. But then once we have Taylor, you're saying that phrase now is clear. And it becomes plainly wrong. But how can that be right when Taylor is not talking about that language as a matter of ordinary English. It's talking about that language as part of the structure of 924C. Sure, but then we bring in Kaiser and then Loper. But we just said that Kaiser doesn't apply to the guidelines. I mean that is something that we said explicitly in Ringford, right? But now we have Loper, and I acknowledge that Loper. Well, Loper is about Chevron deference, right? And so that wouldn't even apply to the guidelines because the guidelines is our deference. It is about an agency's interpretation of its own regulations, not an interpretation of a statute. But what I would disagree with there, Your Honor, in Stinson the court recognized that the commission, when it creates this commentary, is making interpretations of its own legal rule. And it was based within a couple paragraphs of that on Chevron, which has now been overruled. I just suggest to the court that they have to look at Stinson again. The one thing that we explained, and I don't know, maybe we should have explained it more, although there were a lot of issues in that case, is, you know, in the case where the agency is interpreting its own regulations, they promulgate a rule through notice and comment procedures, and it's binding, and then later they issue an interpretive guidance that interprets the rule, right? Yes. The Sentencing Commission promulgates the guidelines. They promulgate the guidelines and the commentary together as one package through the same procedure, right? So it's not the same thing, right? It's not the same. The same concerns in Kaiser don't apply. I would disagree, Your Honor, with your last point, but I understand that it is different, and that is why Stinson has a different rule, if you will, for guideline analysis. We do maintain the position, though, that Loper does impact that. And I can see I'm well with my time. Thank you. Thank you, Mr. Murphy, and thank you, Mr. Quymer. We'll reserve the decision. Have a good day.